FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 05, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KAYLIN T. o/b/o K.T., a minor child,[1] | No.   4:24-cv-5125-EFS |
| Plaintiff, | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |
| v. | |
| FRANK BISIGNANO, Commissioner of Social Security,[2] | |
| Defendant. | |

Plaintiff Kaylin T. asks the Court on behalf of minor child, K.T., to reverse the Administrative Law Judge's (ALJ) denial of Title 16

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

[2] Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is substituted as the Defendant.

children's benefits because the ALJ erred in adopting the opinions of medical expert Dr. Lace that K.T. has less than a marked limitation in the domain of interacting and relating to others; erred in finding that Plaintiff has less that a marked limitation in the domain of interacting and relating to others and the domain of caring for oneself; and the ALJ erred in rejecting the third-party testimony of Kaylin T. In contrast, the Commissioner asks the Court to affirm the denial of benefits. After reviewing the record and relevant authority, the Court concludes that Plaintiff establishes error; this matter is remanded for further proceedings.

## I.    Three-Step Childhood Disability Determination

To qualify for Title XVI supplement security income benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[3] The regulations provide a three-step process

---

[3] 42 U.S.C. § 1382c(a)(3)(C)(i).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

to determine whether a child satisfies the above criteria.[4] First, the ALJ determines whether the child is engaged in substantial gainful activity.[5] Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations."[6] Finally, if the ALJ finds a severe impairment, the ALJ must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments."[7]

If the ALJ finds that the child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ must determine whether the impairment or combination of impairments functionally equals a listing.[8] The ALJ's functional-equivalence assessment requires the ALJ to evaluate the child's functioning in six

---

[4] 20 C.F.R. § 416.924(a).

[5] *Id.* § 416.924(b).

[6] *Id.* § 416.924(c).

[7] *Id.* § 416.924(c)-(d).

[8] *Id.* § 416.926a(a).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

domains. These six domains, which are designed "to capture all of what a child can or cannot do," are: 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for self, and 6) health and physical well-being.[9] A child's impairment is deemed to functionally equal a listed impairment if the child's condition results in marked limitations in two domains, or an extreme limitation in one domain.[10] An impairment results in a marked limitation if it "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities."[11] An extreme limitation is defined as a limitation that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities."[12]

---

[9] *Id.* § 416.926a(b)(1)(i)-(vi).

[10] *Id.* § 416.926a(a).

[11] *Id* § 416.926a(e)(2)(i).

[12] *Id.* § 416.926a(e)(3)(i).

## II.    Factual and Procedural Summary

Plaintiff filed a Title XVI application for childhood disability benefits for K.T. in September 2021, alleging an onset date of October 5, 2017.[13] The claim was denied initially and upon reconsideration.[14] On October 12, 2023, Plaintiff and her child, K.T., attended a hearing before ALJ Lori Freund.[15] Plaintiff testified and a medical expert testified.[16]

On December 4, 2023, the ALJ issued a decision denying benefits.[17]  The ALJ Freund based her ruling on the following findings:

- K.T. was born in August 2011 and was a school-age child on the date that the application was filed in 2021 and was an adolescent as of the date of the hearing and decision in 2023.

---

[13] AR 190-196.

[14] AR 100-104, 110-112.

[15] AR 37-82.

[16] *Id*.

[17] AR 15-34.

- K.T. had not engaged in substantial gainful activity since the application date.

- K.T. has the following severe impairments: anxiety disorder; unspecified depressive disorder; attention deficit hyperactivity disorder (ADHD); impulse control disorder; tic disorder; oppositional defiance disorder (ODD); and learning disorder.

- K.T. did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

- K.T. did not have an impairment or combination of impairments that functionally equaled the severity of a listed impairment or combination of impairments.

- .[18]

When assessing the medical-opinion evidence, the ALJ found:

- the testifying opinions of Michael Lace, PsyD, to be generally but not entirely persuasive;

---

[18] AR 19-28.

- the opinions of state-agency medical sources Leslie Postovoit, PhD, Nevine Makari, MD, and Beth Fitterer, PhD, to be persuasive; and

- the examining opinions of Linda Wolcott, PhD, to be only partially persuasive.[19]

The ALJ found that the assessments from K.T.'s teacher Ms. Rink was generally persuasive.[20] The ALJ discussed but did not rate the persuasiveness of the lay statements from Plaintiff's (K.T.'s) mother.[21]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[22] Plaintiff timely appealed to this Court.

### III.   Standard of Review

A district court's review of the Commissioner's final decision is limited.[23] The Commissioner's decision is set aside "only if it is not

---

[19] AR 27-29.

[20] AR 29.

[21] AR 22-23.

[22] AR 185-187, 1-6.

[23] 42 U.S.C. § 405(g).

supported by substantial evidence or is based on legal error."[24]
Substantial evidence is "more than a mere scintilla but less than a
preponderance; it is such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."[25] Moreover, because it is
the role of the ALJ and not the Court to weigh conflicting evidence, the
Court upholds the ALJ's findings "if they are supported by inferences
reasonably drawn from the record."[26] The Court considers the entire
record as a whole.[27]

---

[24] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[25] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.
1997)).

[26] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[27] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court
"must consider the entire record as whole, weighing both the evidence
that supports and the evidence that detracts from the Commissioner's
conclusion," not simply the evidence cited by the ALJ or the parties.);
*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to

Further, the Court may not reverse an ALJ decision due to a harmless error.[28] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[29] The party appealing the ALJ's decision generally bears the burden of establishing harm.[30]

## IV.   Analysis

## A.   Medical Opinions: Plaintiff establishes consequential error.

Plaintiff challenges the ALJ's assignment of no weight to Dr. Weiss' opinion while giving great weight to Dr. Veraldi's opinion. The Court agrees the ALJ failed to offer specific and legitimate reasons supported by substantial evidence for the weighing of the psychological medical opinions.

_____

cite specific evidence does not indicate that such evidence was not considered[.]").

[28] *Molina*, 674 F.3d at 1111.

[29] *Id.* at 1115 (quotation and citation omitted).

[30] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1. <u>Standard</u>

The ALJ must consider and articulate how persuasive she found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with and supported by the record.[31] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[32] Supportability and consistency are the most important factors,[33] and the regulations define these two required factors as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

---

[31] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[32] 20 C.F.R. § 416.920c(c)(1)–(5).

[33] 20 C.F.R. § 416.920c(b)(2).

1
2
3
4

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[34]

5

6

7

8

The ALJ may, but is not required to, explain how the other listed factors were considered.[35] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[36]

9

   2.   Dr. Lace's Opinions

10

11

12

   The ALJ heard testimony from a reviewing/non-examining psychologist: Dr. Lace. Dr. Lace diagnosed K.T. with depression,

13

14

_____

[34] 20 C.F.R. § 416.920c(c)(1)–(2).

15

16

17

18

19

20

21

[35] *Id.* § 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. *Id.* § 416.920c(b)(3).

22

[36] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

23

anxiety disorder, ADHD, impulse control disorder, a tic disorder, oppositional defiant disorder and obsessive compulsive disorder (OCD).[37] He opined that no listing had been met or equaled.[38] He opined that overall intellectual functioning was weak but not outside of normal limitations and that said that teacher questionnaires supported some limitation but not marked limitations.[39] Dr. Lace opined that K.T. had a less than marked limitation in the following three domains: acquiring and using information, attending and completing tasks, and interacting and relating to others.[40]

Plaintiff's attorney questioned Dr. Lace about a record at Exhibit 13F, 18 (AR 559) that school psychologist Sharon Morrison-Smith observed K.T. in his classroom and assessed his behavior, and observed that K.T. exhibited hyperactivity, conduct problems, and aggression and observed that K.T. was off-task 80% of the time while his peers

---

[37] AR 49.

[38] AR 50.

[39] *Id.*

[40] *Id.*

were off-task about 21% of the time.[41] He said that the observed off-task behavior might be dependent on the day and is not necessarily indicative of across the board behavior and is not proof of marked impairment in the domain of attending and completing tasks.[42]

Plaintiff's attorney noted that K.T. had an IQ of 88 but was 4 grades behind in some classes.[43]  Dr. Lace testified that K.T. was only 11 and that he might adjust better as he aged and that a "let's see what happens in the future" situation existed.[44] Dr. Lace stated that Plaintiff had some limitations common in children with ADHD.[45] When questioned regarding K.T.'s refusal to obey his teachers and participate in class, Dr. Lace stated that this was a refusal and did not indicate depression or anxiety, that there were no hospitalizations, and that

[41] AR 51.

[42] AR 52-53.

[43] AR 53-54.

[44] *Id.*

[45] AR 55.

"there will likely be some change over time."[46] Dr. Lace stated that in children with ADHD it often comes down to the family engaging the child, providing structure, and controlling impulses and said there was no indication his actions had placed anyone in danger.[47] Dr. Lace started that there was a lack of parent training and family therapy in the record.[48] Dr. Lace said that hospitalizations would be required to establish a marked limitation and that an extreme limitation would require showing of hospitalization and police involvement or perhaps placement in a school that specializes in behavioral issues.[49]

Dr. Lace testified that to show a marked level of limitation in the domain of interacting with others the record would need to show consistent expulsions or suspensions, acts of violence, conflicts with the law or aggressiveness, and harming others.[50] He also stated that in the

---

[46] AR 56.

[47] AR 57.

[48] AR 58.

[49] AR 59.

[50] AR 60.

domain of "caring for oneself" there was no limitation because K.T. was able to bathe, brush his teeth, and do self-maintenance.[51]

The ALJ articulated the following reasoning with regard to the persuasiveness of Dr. Lace's testimony:

> Turning to evaluation of this evidence, at the hearing, Dr. Lace advised the medical record established that the claimant had severe mental impairments of depression, anxiety, ADHD, ODD/impulse control disorder, and tic disorder, and that based on his review of the record, the claimant had less than marked limitation in acquiring and using information, attending and completing tasks, and interacting and relating with others, and that he had no limitation in moving about and manipulating objects, caring for himself, and health and physical well-being. Dr. Lace reviewed the current evidence of record, and he identified specific evidence in support of his testimony by pinpoint citation to the record. Additionally, when questioned by the claimant's representative about the claimant having been observed to be off task 80.2% of the time while his peers were observed to be off task at intervals of only 21.4%, Dr. Lace explained that a 30-minute observation of the claimant is insufficient to be determinative of his ability to attend and complete tasks (Hearing). The undersigned also notes that the claimant was observed during a writing lesson, with the claimant having particular difficulty with writing tasks (10E/2; 5F/4; 7F/23). Similarly, when the claimant's representative questioned Dr. Lace about record evidence documenting aggressive and destructive behavior on the part of the claimant, Dr. Lace noted, consistently with the record, that the claimant had age-appropriate ability to

---

[51] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

perform activities of personal care and that he had had no psychiatric admissions or encounters with police due to his behavior (Hearing; see, e.g., 8E/6). However, given evidence of improved but persistent deficits in the claimant's ability to attend and complete tasks, some ongoing difficulty cooperating with and respecting adults, and ongoing but infrequent episodes of enuresis, the undersigned finds the claimant has marked limitation in attending and completing tasks, and less than marked limitation in caring for himself and health and physical well-being (e.g., 8E; 10E; 5F/1; 7F/23; 13F/14). Dr. Lace's medical opinion is therefore generally but not entirely persuasive.[52]

Because Plaintiff argues that the ALJ erred in finding Dr. Lace's opinion persuasive that K.T. did not have a marked impairment in the domain of interacting with others, the Court will focus on that issue. Here, the ALJ gave two reasons to find Dr. Lace's opinion persuasive that KT had a less than marked impairment in the domain of relating and interacting with others: First, that K.T. was able to perform activities of personal care such as bathing and brushing his teeth, and secondly, that K.T. did not have a history of psychiatric hospitalization or encounters with police.[53]

---

[52] AR 26-27.

[53] *Id.*

The first reason given by the ALJ, that K.T. was able to perform activities of personal care, was clearly wrong.  The ability to perform activities of personal care is an ability that relates to the domain of the ability to care for himself.[54]  The domains of "Interacting and relating with others" and "Caring for yourself" are related, but different from each other. "The domain of "Interacting and relating with others" involves a child's feelings and behavior in relation to <u>other people</u> (as when the child is playing with other children, helping a grandparent, or listening carefully to a teacher). The domain of "Caring for yourself" involves a child's feelings and behavior in relation to <u>self</u> (as when controlling stress in an age-appropriate manner)."[55] While it is possible that the ALJ's articulated reason could be a reasonable basis for finding that Dr. Lace's testimony was persuasive that K.T. had a less than marked impairment in the domain of "Caring for Yourself" it was

---

[54] SSR 09-07p: Title XVI: Determining Childhood Disability – Functional Equivalence Domain of "Caring for Yourself."

[55] SSR 09-05p: Title XVI: Determining Childhood Disability – Functional Equivalence Domain of "Interacting and Relating with Others."

not a valid reason to find his testimony persuasive that K.T. had a less than marked impairment in the domain of "Interacting and Relating with Others."

The second reason articulated by the ALJ to find Dr. Lace's testimony persuasive is also flawed. The Court notes that during the relevant period K.T. was a school-aged child between the ages of 6 and 12. There is a very limited scope in which children of that age would be expected to have interactions with the police. One would expect that a child under the age of 12 who had frequent interactions with police would be a child with an "extreme" limitation in the domain of interacting with others. Dr. Lace's insistence that psychiatric hospitalization is necessary to establish the existence of a marked impairment is also error – the regulations contain no such requirement.

The regulations define that a marked impairment in one of the functional domains as follows:

> (2) Marked limitation. (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the

interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

(ii) If you have not attained age 3, we will generally find that you have a "marked" limitation if you are functioning at a level that is more than one-half but not more than two-thirds of your chronological age when there are no standard scores from standardized tests in your case record.

(iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score. (See paragraph (e)(4) of this section.)[56]

As noted above, the regulations provide that a child shall have a "marked limitation" in a functional area if their overall functioning and or functioning in that area is two or more standard deviations below those of their peers who do not suffer from an impairment. "The functional equivalence rules require us to begin by considering how the

---

[56] 20 C.F.R. § 416.926a(b)(2).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

child functions every day and in all settings compared to other children the same age who do not have impairments."[57]

Plaintiff argues that Dr. Lace erred in his testimony that some of K.T.'s impairments are not problematic because they are common among children with ADHD. The Court agrees. The regulation is clear that the applicable standard to be considered is the child's functioning compared with those of a similar-aged child without an impairment. Dr. Lace's testimony makes it unclear whether he considered the appropriate standard when offering his opinion as to K.T.'s functional equivalence, particularly in light of his testimony that proof of police involvement or psychiatric hospitalization was required to establish a marked impairment.

Plaintiff also argues that Dr. Lace erred in his statement that K.T. might "outgrow" his impairments in time and that it was best to take a "wait and see" position. Again, the Court agrees. The regulations require that the child's functioning at his present age be

---

[57] SSR 09-01p: Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule – the "Whole Child" Approach.

compared to those of similar-age children who do not suffer the same limitations.  Dr. Lace's testimony that K.T.'s impairments might improve when he gets older is both speculative and erroneous, and fails to consider K.T.'s functioning at his present age.

There is evidence in the record that establishes that K.T. has a serious impairment in his ability to interact and relate to others.  SSR 09-5p gives guidance as to several examples of limitation in a child's ability to relate and interact with others.  It lists the following examples: Does not reach out to be picked up, touched, and held by a caregiver; has no close friends, or has friends who are older or younger; avoids or withdraws from people he or she knows; is overly anxious or fearful of meeting new people or trying new experiences; has difficulty cooperating with others; and has difficulty playing games or sports with rules.[58]

In a questionnaire completed by K.T.'s 5th grade teacher, Taira Rink, it was noted that K.T. was at a 3rd grade reading level and a 3rd-

---

[58] SSR 09-05p: Title XVI: Determining Childhood Disability – Functional Equivalence Domain of "Interacting and Relating with Others".

4th grade math level.[59] Ms. Rink noted that K.T. refused to do his work and stated:

> [The] largest concern is [K.T.'s] outright refusal to complete any work.  He will occasionally participate in class discussions but has only turned in two partially completed pieces of work this whole year.  We have modified, rewarded, encouraged, cajoled, adapted…you name it, to no avail.[60]

Ms. Rink notes that K.T. is often off-task and talking and disrupting class.[61]  Ms. Rink stated that academically K.T. is capable but that he has developed gaps and delays due to his behaviors.[62] Ms. Rink's written testimony is consistent with the assessment of school psychologist Sharon Morrison-Smith, rendered on April 26, 2021.[63] Ms. Morrison-Smith indicated elevated levels of acting out, hyperactivity, conduct disorder, and aggression, as well as deficits in

---

[59] AR 234.

[60] AR 236.

[61] AR 238.

[62] AR 241.

[63] AR 384-389.

executive function.[64]  Ms. Morrison-Smith notes that K.T. was off-task 80.2% of the time while his peers were off-task only 21.4% of the time.[65] Additionally, she noted that K.T. argued with his teacher 4 times during the observation and that his social skills development fell into the "at risk" range.[66]

K.T.'s fifth grade Individualized Education Plan (IEP) indicated that K.T.'s fifth grade education teacher was Brian Wilson.[67] Mr. Wilson noted that K.T. had a math equivalency of 4.3.[68]  It was noted that on a scale of 1 to 4, with 4 being commensurate with peers, K.T. scored a 1.8 in executive functioning, and that this was increased from a 0.3 at the beginning of the year.[69]  Additionally, K.T.'s social

---

[64] AR 384.

[65] AR 385.

[66] Id.

[67] AR 542.

[68] Ar 544.

[69] AR 545.

skills rating was a 2.3 on a scale of 1 to 4, again with a score of 4 being commensurate with peers.[70]

The IEP in place for K.T. indicated a number of accommodations and modifications such as: shortened assignments, extra time to complete assignments, extra time on quizzes, breaks allowed, individual/small group instruction, preferred seating, reduced environmental distractions, a behavior plan, and modified grading.[71] The overall record contains evidence of behavioral issues which were not properly considered by Dr. Lace and in turn not considered by the ALJ when making a determination of K.T.'s functional equivalence in the domain of interacting and relating to others.

On remand, the ALJ is to reweigh the medical evidence, including reevaluating the school records, IEP evaluations, and school psychologist observations regarding behavioral issues. In summary, the ALJ erred when weighing these limitations.

---

[70] AR 548.

[71] AR 550.

**B.     Plaintiff/Mother's Testimony: Consequential error is established.**

The ALJ discussed Plaintiff's (K.T.'s) mother's written testimony in a child function report and her testimony at the hearing.[72]  Without articulating explanation, the ALJ concluded that the allegations were inconsistent with the medical evidence and other evidence in the record.[73]

Later in her decision, however, the ALJ addressed the information provided by K.T.'s mother in the adult report and at the hearing that K.T. had received numerous detentions and suspensions from school, stating that "while it is certainly possible" this is true, "there is no documentation of such disciplinary actions in the current evidence of record."[74]  In 2017, new regulations were promulgated that provide that an ALJ is not required to articulate how they considered evidence from nonmedical sources in the same manner in which they

_____

[72] AR 22-23.

[73] AR 23.

[74] AR 27.

are required to articulate that reasoning in assessing medical sources.[75] The Court concludes that notwithstanding the regulation, the ALJ has erred. First, in this matter the mother stands in place of her minor child who did not testify as the claimant and a question can be raised whether her testimony can be treated merely as nonexpert witness testimony or whether it should be considered and evaluated in the same manner as claimant testimony. But the Court need not resolve that issue because here the ALJ has not simply failed to articulate her reasoning, she has articulated a flawed reason. While the new regulations might excuse a failure to articulate an ALJ's reasoning, they do not serve as correction if an ALJ gives flawed reasons.

While the mother's testimony was not corroborated by school records, it was not contradicted and is somewhat consistent with the school records, and the ALJ's reasoning that her testimony was not credible unless backed with absolute proof was error. The ALJ's reasoning is not consistent with the regulations as they apply to

_____

[75] 20 C.F.R. § 416.920c(d).

credibility of witnesses in general.  In addition to the fact that the ALJ imposed an improper heightened burden of proof, the ALJ did not afford Plaintiff the opportunity to produce the required proof.  If the ALJ wanted Plaintiff to supply documentation of suspensions from the school, she could have asked for additional information or requested that counsel provide documentation of suspensions from K.T.'s teacher or school administrators.  She did neither and erred in imposing that heightened burden of proof on Plaintiff without notice.

"The ALJ always has a special duty to fully and fairly develop the record" to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel."[76] This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence.[77]

On remand the ALJ is to consider the testimony of K.T.'s mother, and develop the record if necessary.

---

[76] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[77] *Id.* at 1184.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 27

1

2

**C.    Other Steps: The ALJ must reevaluate.**

3

4        Because the ALJ erred when weighing the medical evidence and

5    K.T.'s mother's testimony, the Court will not analyze Plaintiff's

6    remaining arguments. The ALJ on remand is to reevaluate whether

7    Plaintiff's impairments medically or functionally equal a listing.

8    **D.    Remand for Further Proceedings**

9        Plaintiff submits a remand for payment of benefits is warranted.

10   The Court declines to award benefits.

11       The decision whether to remand a case for additional evidence, or

12

13   simply to award benefits is within the discretion of the court."[78] When

14   the court reverses an ALJ's decision for error, the court "ordinarily

15   must remand to the agency for further proceedings."[79] However, the

16

17

18   [78] *Sprague*, 812 F.2d at 1232 (citing *Stone v. Heckler*, 761 F.2d 530 (9th

19   Cir. 1985)).

20   [79] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v.

21   Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course,

22   except in rare circumstances, is to remand to the agency for additional

23

Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three credit-as-true conditions are met and the record reflects no serious doubt that the claimant is disabled.[80]

On remand, the ALJ is to reweigh the medical opinions and call a medical expert to testify. But before doing so, the Court suggests that the ALJ order a psychological consultative examination. The Court recommends that the consultative examiner, who should be specialized in evaluating children, be given enough medical and academic records to allow for a longitudinal perspective as to K.T.'s psychological health.[81] The ALJ is to consider and weigh the medical expert

_____

investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

[80] *Garrison*, 759 F.3d at 1020 (citations omitted).

[81] If a consultative examination is ordered, the consultative examiner is to append the records that the examiner reviewed to the report, or at a minimum clearly identify the records reviewed.

testimony and the mother's testimony. The ALJ is to then reevaluate the sequential disability analysis.

As noted above, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.[82] Based on the language and tone used by the ALJ in her written decision, it is clear the ALJ questioned the veracity of the mother's testimony that K.T.'s school had multiple detentions and suspensions imposed on him as a result of his behavioral issues. While the testimony was not corroborated by school records it was not contradicted and is somewhat consistent with the school records. The ALJ did not ask for additional information nor did she request that counsel provide documentation of suspensions from K.T.'s teacher or school administrators.

To ensure an unbiased review on remand, the Court finds it prudent that a different ALJ be assigned on remand.[83] While directing that a different ALJ hear the matter on remand is rare, such is

---

[82] *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

[83] *See* 20 C.F.R. § 940.

necessary here to ensure that the disability evaluation is not influenced by any suggestion of bias or tainted by the flawed medical expert testimony.

Accordingly, remand for further proceedings, rather than for an award of benefits, is necessary.[84]

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) before a new ALJ**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 11 and 17**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

---

[84] *See Garrison*, 759 F.3d at 1021; *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

**DATED** this 5th day of June 2025.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge